**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 06105**
carlpost@lawofficeofdanielsnyder.com
**John David Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

          Of Attorneys for Plaintiff Lou Colasanti


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION


| | |
|---|---|
| **LOU COLASANTI,** | Case No. 3:19-cv-00443-YY |
| PLAINTIFF, | **SECOND AMENDED COMPLAINT** |
| v. | Employment and other discrimination in violation of Title I and Title II ADA; the Rehabilitation Act of 1973; and supplemental state law claims |
| **CITY OF PORTLAND and STATE OF OREGON,** | |
| DEFENDANTS. | JURY TRIAL REQUESTED |


      1.     Plaintiff Lou Colasanti brings this action to redress violations of Title I and Title

II of the ADA, the Rehabilitation Act, and supplemental state law claims. Plaintiff seeks

compensatory and equitable relief as well as attorney fees and costs.

PAGE 1 – SECOND AMENDED COMPLAINT

## JURISDICTION

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to plaintiff's Oregon law claims because they arise from the same nucleus of operative facts as the federal claims.

4.      Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claim arose in this Judicial District.

5.      On May 23, 2018, Plaintiff, through his attorney, timely mailed notice of tort claim to each Defendant under Oregon law. On May 24, 2018, Defendant City of Portland acknowledged receipt of said tort claim notice. On May 24, 2018, Defendant State of Oregon acknowledged receipt of said tort claim notice.

6.      On June 13, 2018, Plaintiff filed an administrative complaint against the City of Portland with the Oregon Bureau of Labor and Industries Civil Rights Division ("BOLI") for discrimination and retaliation, Case No. DPEMDP18061-10889, which was co-filed with the Equal Employment Opportunity Commission ("EEOC), Case No. 38D-2018-00617C.

7.      On June 13, 2018, Plaintiff filed an administrative complaint against the State of Oregon with BOLI for discrimination and retaliation by Defendant State of Oregon, Case No. DPEMDP180613-10890, which was co-filed with the EEOC, Case No. 38D-2018-00618C.

8.      On November 20, 2018, BOLI issued a notice of right to sue letter in Case No. DPEMDP18061-10889 concerning the City of Portland. On November 20, 2018, BOLI issued a notice of right to sue letter in Case No. DPEMDP18061-10890 concerning the State of Oregon.

9.      On December 4, 2018, the EEOC issued a right to sue letter in Case No. 38D-

PAGE 2 – SECOND AMENDED COMPLAINT

2018-00618C.

10.     On February 15, 2019, Plaintiff filed a lawsuit against both Defendants in Multnomah County Circuit Court for the State of Oregon. On March 26, 2019, Defendant City of Portland removed the case to this court.

## PARTIES

11.     At all times material herein, Plaintiff Lou Colasanti ("Plaintiff" or "Colasanti") was a resident of Portland, Multnomah County, Oregon.

12.     Defendant City of Portland (hereafter "Defendant City") is a political subdivision of the State of Oregon. Defendant City is and was an Oregon employer. Plaintiff was an employee of Defendant City in its Portland Bureau of Police or Portland Police Bureau ("PPB").

13.     At all times material, the Department of Police Standards and Training (hereafter "DPSST") was a department of Defendant State of Oregon ("Defendant State"). Defendant State, through DPSST, conducts public safety training throughout Oregon and at the central academy in Salem and certifies qualified officers at various levels from basic through executive as well as certifying qualified instructors. Plaintiff attended a basic police training course coordinated by DPSST at its Academy.

14.     At all times material, Defendant State's DPSST Academy was also a place of public accommodation under Oregon law to the extent it provided governmental services to Oregonians and others.

15.     At all times relevant, Defendant City's employees and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with Defendant City.

16.     At all times relevant, Defendant State's employees, supervisors, and instructors as

PAGE 3 – SECOND AMENDED COMPLAINT

their conduct is alleged herein were acting within the course and scope of their employment with Defendant State.

## FACTUAL ALLEGATIONS

17.     Plaintiff is a qualified individual with a disability. Plaintiff has a history of organic cardiovascular disease, to wit, a congenital heart condition, Tetralogy of Fallot, which is caused by a combination of heart defects. These defects, which affect the structure of his heart, result in oxygen-poor blood. Said disability substantially impairs Plaintiff's major life activities of running, lifting, pushing, and pulling. Said disability also causes Plaintiff to become fatigued at a faster rate during exercise and to be fatigued after exercise.

18.     Prior to applying for a position with Defendant City, Plaintiff had four open heart surgeries for his Tetralogy of Fallot condition. These surgeries occurred during his infancy, childhood, and teenage years. All four of these surgeries took place at Minneapolis Children's Hospital.

19.     In May 2016, Plaintiff graduated from Loyola University ("Loyola") in Chicago, Illinois with a Bachelor of Arts degree. At Loyola, Plaintiff minored in criminal justice. After graduation from Loyola, Plaintiff decided to pursue a career in law enforcement.

20.     In August 2016, Plaintiff began a year-long academy certification through the State of Minnesota Peace Officer and Standards (POST) Board Training Academy. Plaintiff had a supportive dialogue with his police instructors in Minnesota about his heart condition. Plaintiff passed both the POST academic and physical requirements. In August 2017, Plaintiff was certified to be licensed, upon agency hire, as a Peace Officer for the State of Minnesota.

21.     In 2017, Plaintiff applied for a job with Defendant City as a police officer in its PPB. Plaintiff took all of PPB's pre-hire examinations and tests, including physical ability,

PAGE 4 – SECOND AMENDED COMPLAINT

psychological and medical tests. While attending the PPB's pre-hire physical medical examination, Plaintiff disclosed to the examining physician his congenital heart condition, Tetralogy of Fallot, and presented a letter from his cardiologist who wrote that Plaintiff was physically fit and cleared by his medical provider to serve as an active Police Officer so long as he does not have a Taser used on him during training. Defendant City passed Plaintiff on all pre-hire tests, including a physical exam, which included a treadmill stress test. On May 3, 2017, Plaintiff passed the National Testing Network Police Officer Examination at Portland State University.

22.    After undergoing Physical Activity Test (PAT) testing at Defendant City's Airport Way training center, Plaintiff requested to retake the PAT after disclosing his heart condition to City of Portland Human Resources staff and a Portland Police Officer. Defendant City allowed plaintiff to retest a second time which allowed him to pass and proceed during the pre-hire process.

23.    Before Defendant City sent Plaintiff to Defendant State's DPSST Academy, Defendant City's PPB was required by Oregon administrative rules, including OAR 259-008-025 and OAR 259-008-0010 to have further medical evaluation of Plaintiff and arrange for a Form F-2 to be submitted to DPSST, which it failed to do. On November 21, 2017, PPB Sergeant Chris Gjovik #38946 signed a DPSST F-5 Application of Training for Plaintiff. In that application, Sergeant Gjovik acknowledged that Plaintiff met "the minimum standards under OAR 259-008-0010." OAR 259-008-0010 (8)(a) Physical Standards provides, "Prior to admittance into a basic training course, as described in OAR 259-008-0025, all law enforcement officers or applicants must demonstrate the physical abilities to perform the critical and essential tasks of a law enforcement officer." OAR 259-008-025 (F) Cardiovascular (iii) provides, "Law enforcement

PAGE 5 – SECOND AMENDED COMPLAINT

officers or applicants who have a history of organic cardiovascular disease will necessitate further medical evaluation." OAR 259-008-0010 (9)(f) provides that "Law enforcement officers and applicants will not be admitted into a basic course until the Department receives a Form F-2A attesting that the minimum physical standards have been met or a physical standard waiver has been granted, as described in section (10) of this rule." Had Defendant City arranged for further medical evaluation or physical standard waiver, there would have been an early dialogue at DPSST on the accommodations Plaintiff needed to succeed at the Academy.

24.     On November 22, 2017, Plaintiff received an offer letter from Defendant City's PPB to be sworn in as a Police Officer. On January 4, 2018, Plaintiff was sworn in as a Police Officer with Defendant City. During the swearing-in ceremony, Chief Danielle Outlaw and Portland Mayor Ted Wheeler stressed how "much of a family" the PPB is and how "we have our officer's backs." Chief Outlaw also made a point of saying that it is important to "always do the right thing." After the swearing-in ceremony, Plaintiff and other new police recruits began working at the Airport Way Training Center in preparation for the start of the DPSST Academy.

25.     On or about January 15, 2018, Plaintiff took extra steps to notify the City's evaluating doctors of his condition. On instruction from the PPB, Plaintiff authorized his complete medical chart to be sent to PPB.

26.     On January 16, 2018, Plaintiff spoke to his supervisor, Sergeant William Goff, about his heart condition, thereby disclosing his disability and requesting accommodations. Sergeant Goff is also the DPSST liaison for the PPB. Sergeant Goff was Plaintiff's direct supervisor at the training center. Sergeant Goff was later Plaintiff's direct supervisor at the DPSST Academy. Plaintiff told Sergeant Goff about his heart condition prior to going to the Academy in case his heart condition affected his performance. Plaintiff told Sergeant Goff that

PAGE 6 – SECOND AMENDED COMPLAINT

he had four heart surgeries for Tetralogy of Fallot and he was worried that instructors might give him bad reviews should his heart cause him to fatigue during evaluations. Plaintiff told Sergeant Goff that his cardiologist in Minneapolis, Marko Vezmar, M.D., said that the results of a routine heart monitor test Plaintiff had taken in December 2017 showed some abnormal heart arrhythmia and that it was something to keep an eye on. Sergeant Goff failed to engage in an interactive process with Plaintiff. Instead, Sergeant Goff said, "Keep this to yourself. It is likely no one else will need to know about this. It probably will not be an issue."

27.    On or about January 18, 2018, Plaintiff's Personal Health History was forwarded to Defendant City of Portland PPB's Employee Health from the Children's Hospital & Clinics in Minneapolis, Minnesota.

28.    While training at the City of Portland PPB Airport Way Training Center, Plaintiff also disclosed his organic heart condition to a nurse at the Training Center. Plaintiff made his report in writing. The nurse talked to Plaintiff about his unique health history, saying that Plaintiff's surgical history made him an "interesting fellow," and that she would speak to a doctor to see if the typical vaccination regimen would be approved. Later, Plaintiff received a call from a doctor, who said he was working for the PPB. The doctor inquired about Plaintiff's suitability to wear a gas mask. Plaintiff explained his organic cardiovascular condition to this doctor in detail.  The doctor approved Plaintiff being issued a standard police gas mask.

29.    Plaintiff made no secret of his disability when interacting with Defendant City and Defendant State. On January 19, 2018, Plaintiff sent a text to other PPB classmates enrolled in the DPSST Basic Police Class. In that text, Plaintiff wrote that in repeated, high-intensity drills, he has a cardiac threshold due to the restricted blood flow in his heart, but would give the team his best.

PAGE 7 – SECOND AMENDED COMPLAINT

30.     On January 21, 2018, Plaintiff started classes at Defendant State's DPSST Academy in Salem. During his first week at the Academy, Plaintiff took the Oregon Physical Abilities Test (ORPAT or Pre-ORPAT), a timed obstacle-type course with hurdles, stairs, cones and bars to jump over which requires six laps of repetition. During the test, Plaintiff pushed himself to complete the course in time. He became fatigued, had trouble breathing, became faint, and tasted blood in his mouth. Plaintiff finished the Oregon Physical Abilities Test in 6 minutes, 19 seconds which was 49 seconds longer than the goal of 5 minutes, 30 seconds. Plaintiff was not the only member of his class that did not pass the Pre-ORPAT at that time. Plaintiff told the DPSST instructor, who was evaluating him, that he had trouble breathing during the test and tasted blood in his mouth. The DPSST instructor said that it was "normal to taste blood" during the test. The DPSST instructor told Plaintiff that there would be additional chances to pass the ORPAT. That night, Plaintiff was physically ill in his bed and was coughing.

31.     On January 24, 2018, Plaintiff submitted a Goal Assignment from his personal email account to DPSST Instructor Lieutenant Donald Sedlacek. In that email, Plaintiff notified Lieutenant Sedlacek of his disability and requested an accommodation, writing that "due to my serious health condition . . . I can fatigue at a fast rate." By that, Plaintiff meant fatiguing when engaging in higher intensity drills.

32.     Defendant State could have accommodated Plaintiff by modifying the ORPAT test, giving Plaintiff other physical tests to evaluate his fitness, or having his fitness evaluated by a physician, physical therapist, or other health care provider. Defendant State failed to engage in an interactive process with Plaintiff when an accommodation was possible.

33.     On January 25, 2018, Plaintiff spoke to Sergeant Goff about Plaintiff's score on the Pre-ORPAT, as well as Plaintiff's heart condition and history of heart surgeries. At first,

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Sergeant Goff said he would let all of Plaintiff's instructors know about Plaintiff's heart condition. Then Sergeant Goff said, "on second thought, you should talk to your instructors yourself about your heart. I don't want to get involved 'for legal reasons.'" Sergeant Goff explained that there would be additional chances for Plaintiff to pass the ORPAT while at Salem and encouraged him to train harder. Plaintiff told Sergeant Goff that he was not sure if he could ever pass the ORPAT, as it is not an issue of effort or training, but limitations due to his heart condition. Defendant State failed to engage in an interactive process with Plaintiff when an accommodation was possible. Defendant City could have accommodated Plaintiff by approaching DPSST to have the that physical test modified, giving other physical tests that provided similar fitness information, or having his fitness evaluated by a physician, physical therapist, or other health care provider. Instead, Sergeant Goff told Plaintiff that they already talked about Plaintiff's heart condition before and he did not want Plaintiff to mention his heart condition to him again.

34.　　On January 26, 2018, Plaintiff's class was called to a general meeting with DPSST instructors. During that meeting, Plaintiff's class was berated by DPSST Skills Instructor Lieutenant Michael Stradley for the class's inadequate physical prowess, care, and drive. Lieutenant Stradley's tone was firm, characterizing Plaintiff's class as the "worst class in recent memory, with the most students of any class ever failing the ORPAT." Lieutenant Stradley said that the class members should increase their physical fitness, and be like Lieutenant Stradley's own father, who "stormed the beaches of Normandy and lived until he was 95." Lieutenant Stradley also said that his "best friend died of heart issues at a young age," implying that his friend didn't work out hard enough and fell victim to heart issues that were preventable. Lieutenant Stradely went on to say that he would be watching the plaintiff's class particularly

PAGE 9 – SECOND AMENDED COMPLAINT

closely from now on for any "missteps". Lieutenant Stradley ended the presentation by saying

that if the class members had any questions or concerns he did "not want to hear them."

35.     On January 26, 2018, Plaintiff approached Lieutenant Sedlacek after class and

asked if he could talk to him. Plaintiff said that he was upset by Lieutenant Stradley's belittling

Plaintiff's class's ORPAT performance. Plaintiff disclosed his disability to Lieutenant Sedlacek,

informing Sedlacek that Plaintiff had a heart condition and he was concerned. Lieutenant

Sedlacek informed Plaintiff that he had a heart condition as well. Plaintiff mentioned the

belittling speech made by Stradley to his class saying "they are talking about the ORPAT in

there".  Plaintiff asked Lieutenant Sedlacek which staff members needed to know about

Plaintiff's condition. Lieutenant Sedlacek said that Plaintiff did not need to go around telling

anyone else about the details of his heart condition. Lieutenant Sedlacek said that Plaintiff should

keep his heart condition to himself because some people in the past had used health conditions as

an "excuse." This made Plaintiff feel diminished for having a disability and requesting

accommodations and discouraged and intimidated Plaintiff from requesting accommodations for

his disability.

36.     Between January 26, 2018, and March 4, 2018, due to the casual, dismissive

responses Plaintiff received when disclosing his organic heart disease to DPSST instructors,

including an instructor rebuking the class for their low physical performance, Plaintiff put

immense pressure on himself to work harder to meet the ORPAT goals. Plaintiff worked out on

his free time, increasing his physical index score by fifteen points, despite experiencing a

growing underlying fatigue which he had trouble shaking.

37.     During training, DPSST Emergency Vehicle Operations Course (EVOC)

Instructor Michael Johnson told Plaintiff, "Portland only hires runts and cunts." Plaintiff was

PAGE 10 – SECOND AMENDED COMPLAINT

concerned that his instructors thought he was a "runt" because he tried to talk to them about his disability. Trying to disprove Johnson's comment, Plaintiff worked even harder in the gym to improve his fitness.

38.     Based largely on several facts: a lack of physical accommodations provided by PPB and DPSST; numerous failed attempts for a meaningful dialogue; and instructors telling Plaintiff to keep quiet about his disability, Plaintiff worked himself to a dangerous state of exhaustion. Plaintiff became even more fatigued and anxious as the weeks progressed. Plaintiff continually worked and strained to move past his heart condition, and also from emotional stress of trying to navigate the many mixed messages Plaintiff was receiving from instructors.

39.     Prior to the Academy mid-term exam, Plaintiff performed well on all academic examinations, earning scores of 95.83%, 82.76%, 88.89%, and 86.96%, with an average score of 88.35%. A number of his classmates scored significantly lower, typically in the 60% range. Plaintiff also passed both firearms courses on his first attempt and was on target to receive his Marksmanship ribbon. Many of his classmates failed their firearms qualification on the first attempt.

40.     On March 5, 2018, while Plaintiff was going into a written mid-term examination, he felt extremely fatigued and ill. Plaintiff did not pass the written mid-term exam, scoring a 74.38% instead of a 75% passing score, which is the equivalent of one question. After receiving his written score, Plaintiff was abruptly handed dismissal papers by Lieutenant Sedlacek, who said, "This isn't the worst day of your life, is it?" referring to Plaintiff's heart condition. Lieutenant Sedlacek then directed Plaintiff to check out of the Academy the next morning. Plaintiff explained to Lieutenant Sedlacek that he had not done as well as he expected on the test due to fatigue due to his efforts to improve his physical performance on the ORPAT.

PAGE 11 – SECOND AMENDED COMPLAINT

41.     Plaintiff read the DPSST dismissal letter, which provided Plaintiff with seven (7) days to appeal his dismissal. The letter instructed Plaintiff to contact DPSST Academy Operations Director, also known as Academy Training Manager, Michael Herb if he wanted to appeal his dismissal.

42.     On the morning of March 6, 2018, Plaintiff reported to PPB Lieutenant Peter Mahuna at PPB headquarters in downtown Portland. Lieutenant Mahuna asked, "What happened?" Plaintiff told Lieutenant Mahuna that Plaintiff had underperformed on the mid-term exam due to fatigue from trying to train past his heart condition and he requested the accommodations of being allowed to complete his probationary status with PPB. Plaintiff asked Lieutenant Mahuna if the PPB had ever provided accommodations to a recruit attending the DPSST Academy. Lieutenant Mahuna said, "Who would we accommodate?" Plaintiff asked Lieutenant Mahuna to accommodate him. Plaintiff suggested a hypothetical scenario of person with a disability other than his own, saying "someone with one lung" whom PPB would accommodate. Lieutenant Mahuna laughed at Plaintiff. Lieutenant Mahuna belittled Plaintiff's disability by asking him, "Do you have one lung?" Lieutenant Mahuna then volunteered that the PPB had modified physical testing in the past, stating that PPB already changed its physical testing to eliminate the push-pull machine because it was biased against female applicants. Lieutenant Mahuna then falsely asserted that the PPB "never knew" about Plaintiff's heart condition. This bewildered Plaintiff because Plaintiff had disclosed his condition at the outset, had discussed his disability with PPB medical staff, had disclosed his disability to other recruits, had disclosed his disability and requested accommodations from DPSST instructors, had a running dialog about his condition with Sergeant Goff, and had requested accommodations from Sergeant Goff. Lieutenant Mahuna also told Plaintiff that his dismissal was final and Plaintiff

PAGE 12 – SECOND AMENDED COMPLAINT

would not "be recycled back" into the Portland new recruit program. Lieutenant Mahuna explained that the Portland Police Bureau had too many other recruits and too few vacancies to allow Plaintiff to continue if his appeal were to fail. Lieutenant Mahuna directed Plaintiff to turn in his badge and firearm at that time.

43.     Later, on the afternoon of March 6, 2018, Plaintiff called Mr. Herb to appeal his dismissal. Mr. Herb did not answer Plaintiff's telephone call so Plaintiff left a voicemail message informing Mr. Herb that he wanted to appeal his dismissal from the Academy. Mr. Herb never returned Plaintiff's call.

44.     On March 7, 2018, Plaintiff sent an email to Mr. Herb, again requesting an appeal of his dismissal from the Academy. Plaintiff sent copies of that email to Sergeant Goff and Erik Gabliks, Director of the DPSST. Herb never responded to Plaintiff's email. However, on March 8, 2018, Plaintiff received an email from Director Gabliks stating that Plaintiff's appeal was disallowed. Director Gabliks' email was copied to Mike Leloff, DPSST Training, Sergeant Goff, and Mr. Herb.

45.     On the afternoon of March 8, 2018, Plaintiff submitted a second appeal to Director Gabliks, Sergeant Goff, Mr. Herb, and Mr. Leloff. Plaintiff asked Director Gabliks that Plaintiff be allowed to retake the test as a reasonable accommodation under both Titles I and II of the Americans with Disabilities Act. That afternoon, March 8, 2018, Director Gabliks responded by email that he would look into the matter, but did not specify a response date or potential course of action.

46.     On the evening of Thursday, March 8, 2018, Plaintiff submitted a third appeal to Director Gabliks, Sergeant Goff, Mr. Herb, Mr. Leloff, and PPB Sergeant Christopher Gjovik providing further information about both his heart-related health symptoms, along with the test,

PAGE 13 – SECOND AMENDED COMPLAINT

as his reasons for deserving an in-person appeal.

47.     On March 9, 2018, Plaintiff was still feeling abnormally fatigued and went to Urgent Care at Kaiser Permanente for examination.

48.     On the morning of March 14, 2018, Sergeant Gjovik contacted Plaintiff and gave Plaintiff forty (40) minutes notice to be at PPB headquarters with all of his police-issued gear and uniform. Plaintiff specifically asked if he was being terminated for physical reasons. Christopher Gjovick and Sergeant William Goff responded, "Yes."

49.     Plaintiff was then fired by Sergeant Gjovik, who handed Plaintiff a letter signed by Chief Outlaw, in which Chief Outlaw wrote that Plaintiff "failed to meet academic and physical standards."

50.     After Plaintiff was terminated, Plaintiff received an email from Director Gabliks that the DPSST had "no record" of Plaintiff "asking for accommodations," thus DPSST considered the matter of his appeal closed.

## FIRST CLAIM FOR RELIEF

### (Defendant City of Portland)

### (Title I of the Americans with Disabilities Act – Discrimination)

51.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

52.     At all times material, Defendant City was an employer for the purpose of, and subject to, the Americans with Disabilities Act (ADA).

53.     Plaintiff has an impairment which substantially limits one or more major life activities, has a history and/or record of such impairment, and/or was regarded by Defendant City as having such impairment.

54.     Defendant City discriminated against Plaintiff because of his disability as alleged

PAGE 14 – SECOND AMENDED COMPLAINT

above.

55.     Defendant City utilizes standards, criteria or methods of administration that have the effect of discrimination against people with disabilities, such as plaintiff.

56.     Defendant City uses qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability, such as Plaintiff.

57.     Defendant City participates in a contractual or other arrangement or relationship with defendant State that has the effect of subjecting a qualified job applicant or employee with a disability to the discrimination prohibited by the ADA.

58.     At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position, with or without reasonable accommodation. Plaintiff requested reasonable accommodations from Defendant City. Defendant actively discouraged Plaintiff from requesting accommodations. Defendant City failed to engage in the interactive process with Plaintiff. Defendant City could have accommodated Plaintiff by: following Oregon Administrative Rules OAR 259-008-0010(8)(a); approaching DPSST to request that it adjust the threshold to pass that physical test; to give other equivalent physical tests for fitness; or by having Plaintiff's fitness evaluated by a physician, physical therapist, or other health care provider; and by requesting DPSST to give Plaintiff a retest on the written mid-term at a time when Plaintiff was not fatigued. Finally, Defendant City discriminated against Plaintiff by discharging Plaintiff from employment.

59.     Defendant City's conduct violated 42 U.S.C. § 12112.

60.     As a result of Defendant City's unlawful conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

61.     Plaintiff is entitled to equitable relief, including, but not limited to, a declaration

PAGE 15 – SECOND AMENDED COMPLAINT

that Defendant City violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further violations of the ADA, including but not limited to, modification of defendant's policies and procedures to assure people with disabilities are treated equally to non-disabled individuals and are not subjected to tests or other selection criteria that screen out or tend to screen out an individual with a disability.

62.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury. Plaintiff estimates that his economic damages do not exceed $350,000.

63.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proven at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury. Plaintiff estimates that his non-economic damages do not exceed $500,000.

64.     The Court should enter an order declaring that Defendant City violated the ADA.

65.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

66.     Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

67.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

PAGE 16 – SECOND AMENDED COMPLAINT

## SECOND CLAIM FOR RELIEF

### (Defendant City of Portland)

### (Title I of the Americans with Disabilities Act – Interference)

68.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

69.    Defendant City interfered with Plaintiff's exercise of his right to seek accommodations for his disability.

70.    As a result of Defendant City's unlawful conduct, Plaintiff suffered, and continues to suffer, damage and is entitled to the damages and other relief set forth below.

71.    Plaintiff is entitled to equitable relief, including, but not limited to, back pay, lost benefits, retirement, seniority, a declaration that Defendant City violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further interference with his rights.

72.    The Court should enter an order declaring that Defendant City violated the ADA.

73.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

74.    Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to an award of attorneys' fees, expert witness fees and costs incurred herein.

75.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## THIRD CLAIM FOR RELIEF

### (Defendant City of Portland)

### (Oregon Disability Discrimination)

76.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

77.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

78.     Defendant City is an 'employer' as defined at ORS 659A.106.

79.     Plaintiff has a known disability. Plaintiff disclosed his disability to Defendant City.

80.     Defendant City utilizes standards, criteria or methods of administration that have the effect of discrimination against people with disabilities, such as plaintiff.

81.     Defendant City uses qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability, such as Plaintiff. Defendant City participates in a contractual or other arrangement or relationship with defendant State that has the effect of subjecting a qualified job applicant or employee with a disability to the discrimination prohibited by ORS 659A.112 et al.

82.     Defendant City failed to engage in the interactive process with Plaintiff regarding his request for accommodations.

83.     Defendant City could have accommodated Plaintiff by: following OAR 259-008-0010 (8)(a); by approaching DPSST to request that it modify the physical test; to give other equivalent physical tests for fitness; or have Plaintiff's fitness evaluated by a physician, physical therapist, or other health care provider, and by requesting DPSST to give Plaintiff a retest on the written mid-term at a time when Plaintiff was not fatigued.

84.     Defendant City discharged Plaintiff from employment and treated Plaintiff less favorably than non-disabled employees.

85.     Defendant City's conduct as alleged above constitutes discrimination against Plaintiff due to his disability pursuant to ORS 659A.103 et seq.

86.     As a result of Defendant City's unlawful employment actions, Plaintiff suffered,

PAGE 18 – SECOND AMENDED COMPLAINT

and continues to suffer, economic and non-economic damages.

87.     Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant City violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination.

88.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury. Plaintiff estimates that his economic damages do not exceed $350,000.

89.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proven at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury. Plaintiff estimates that his non-economic damages do not exceed $500,000.

90.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

91.     Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

92.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FOURTH CLAIM FOR RELIEF

### (Defendant State of Oregon)

### (Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.))

93.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

PAGE 19 – SECOND AMENDED COMPLAINT

94.     Defendant State's DPSST is a "public entity" as that term is defined in 42 U.S.C. § 12131(1).

95.     Plaintiff is a qualified individual with a disability as that term is defined in § 12131(2). At all relevant times, Defendant State was aware of Plaintiff's organic cardiac disability. Defendant State regarded Plaintiff as having a disability.

96.     Defendant State discriminated against Plaintiff as alleged above.

97.     Defendant State has established testing criteria, methods that unnecessarily restricts participation by individuals with disabilities, such as Plaintiff.

98.     Defendant refused to modify its policies and practices to allow Plaintiff to fully and equally participate in its services.

99.     Defendant State intimidated and interfered with Plaintiff's attempts to request accommodations thereby preventing him from exercising or fully engaging in his protected rights.

100.    Defendant State's actions and refusal to modify its policies was motivated to exclude people with disabilities from being selected over non-disabled individuals.

101.    Defendant State conducted violated 42 U.S.C. § 12132 and its accompanying regulations.

102.    Defendant State's conduct showed deliberate indifference to Plaintiff's rights.

103.    As a result of Defendant State's unlawful conduct, Plaintiff suffered and continues to suffer harm and is entitled to the damages and other relief set forth below.

104.    Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant State violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation and requiring defendant State to modify its

PAGE 20 – SECOND AMENDED COMPLAINT

policies and procedures and prohibit further exclusion from participation in or denial of the

benefits of the services, programs, or activities of the public entity.

105.    Plaintiff is entitled to an award for past lost wages and benefits and future lost

earnings, benefits, and lost earning capacity, and other compensatory damages for past and future

pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair

by a jury. Plaintiff estimates that his economic damages do not exceed $350,000.

106.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff

for emotional distress and other non-pecuniary losses in an amount to be proven at trial. Plaintiff

should be awarded non-economic damages in an amount determined fair by a jury. Plaintiff

estimates that his non-economic damages do not exceed $500,000.

107.    Plaintiff is entitled to a declaration that Defendant State violated Title II of the

ADA.

108.    To the extent any amount awarded to Plaintiff is for damages occurring prior to

the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate

from the date the damage occurred until the date of judgment.

109.    Pursuant to 42 U.S.C. §§ 12205 and 2000e-5, Plaintiff is entitled to an award of

attorneys' fees, expert witness fees, and costs incurred.

110.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and

fees from the date of judgment until the date paid.

### FIFTH CLAIM FOR RELIEF

### (Defendant State of Oregon)

### (Violation of the Rehabilitation Act of 1973, Section 504 (29 U.S.C. § 701 et seq.))

111.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

PAGE 21 – SECOND AMENDED COMPLAINT

112.    Plaintiff is a qualified individual with disabilities or handicap under the Rehabilitation Act because he is substantially limited in major activities.

113.    At all times material, Defendant State was and is a recipient of federal financial assistance for its courses, classes, programs, and activities.

114.    Defendant State's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding him or denying him the benefits of Defendant State's DPSST courses, classes, programs, and activities because of his disability.

115.    Defendant State discriminated against Plaintiff as alleged above.

116.    Defendant State has established testing criteria, methods that unnecessarily restricts participation by individuals with disabilities, such as Plaintiff.

117.    Defendant refused to modify its policies and practices to allow Plaintiff to fully and equally participate in its services.

118.    Defendant State intimidated and interfered with Plaintiff's attempts to request accommodations thereby preventing him from exercising or fully engaging in his protected rights.

119.    Defendant State's actions and refusal to modify its policies was motivated to exclude people with disabilities from being selected over non-disabled individuals.

120.    Defendant State conducted violated 42 U.S.C. § 12132 and its accompanying regulations.

121.    Defendant State's conduct showed deliberate indifference to Plaintiff's rights.

122.    Defendant State's conduct showed deliberate indifference to Plaintiff's rights because Defendant State knew that Plaintiff had disabilities.

123.    As a result of Defendant State's unlawful conduct, Plaintiff suffered, and

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

continues to suffer, harm and is entitled to the damages and other relief set forth below.

124.    Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant State violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

125.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury. Plaintiff estimates that his economic damages do not exceed $350,000.

126.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proven at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury. Plaintiff estimates that his non-economic damages do not exceed $500,000.

127.    Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to compensation for his damages and an award of attorneys' fees and costs. Plaintiff's damages are not expected to exceed $500,000. Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

## SIXTH CLAIM FOR RELIEF

## (Defendant State of Oregon)

## (Discrimination on the Basis of Disability in Violation of ORS 659A.142)

128.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

129.    Defendant State's DPSST Academy is a place of public accommodation as that term is defined in ORS 659A.400.

130.    Plaintiff is an "individual with a disability" as that term is defined in ORS

PAGE 23 – SECOND AMENDED COMPLAINT

659A.104.

131.   At all relevant times, Defendant State was aware of Plaintiff's physical disabilities.

132.   Defendant State discriminated against Plaintiff because of his disability as alleged above.

133.   Defendant State has established testing criteria, methods that unnecessarily restricts participation by individuals with disabilities, such as Plaintiff.

134.   Defendant refused to modify its policies and practices to allow Plaintiff to fully and equally participate in its services.

135.   Defendant State intimidated and interfered with Plaintiff's attempts to request accommodations thereby preventing him from exercising or fully engaging in his protected rights.

136.   As a result of Defendant State's unlawful conduct, Plaintiff suffered and continues to suffer harm and is entitled to the damages and other relief set forth below.

137.   Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant State violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

138.   Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury. Plaintiff estimates that his economic damages do not exceed $350,000.

139.   Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proven at trial. Plaintiff

PAGE 24 – SECOND AMENDED COMPLAINT

should be awarded non-economic damages in an amount determined fair by a jury. Plaintiff estimates that his non-economic damages do not exceed $500,000.

140.    Pursuant to ORS 659A.885, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendants and each of them, jointly and severally, as follows:

A.    A sum which will fully compensate Plaintiff for his non-economic damages in a sum that is just as determined by a jury, but not to exceed $500,000;

B.    A sum which will fully compensate Plaintiff for his economic damages in a sum that is just as determined by a jury, but not to exceed $350,000;

C.    Equitable relief, including, but not limited to, reinstatement if Plaintiff so chooses;

D.    Plaintiff's costs and disbursements incurred herein;

E.    Plaintiff's attorneys' fees; and

F.    For any such other and further relief as the Court may deem just and equitable.

Plaintiff demands a jury trial.


DATED: March 16, 2020

LAW OFFICES OF DANIEL SNYDER

*s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff Lou Colasanti

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249